EVANS v. VICTOR, U. S. Marshal, et al.

(District Court, E. D. Oklahoma. . August 30. 1912.)

No. 1,852.

1. INDIANS (§§ 34, 35*)—INTRODUCTION OF LIQUOR INTO INDIAN TERRITORY—
INDIAN COUNTRY.

That portion of Oklahoma formerly Indian Territory did not cease
to be Indian country on the admission of the state, nor did such ad-
mission affect the application to that part of the state of Rev. St. §
2139, or of Act Jan. 30, 1897. c. 109, 29 Stat. 506, relating to the sale
of liquor to Indians and its introduction into the Indian country, at least
so far as its introduction from points outside the state is concerned.

[Ed. Note.—For other cases, see Indians, Cent. Dig. §§ 60–62; Dec.
Dig. §§ 34, 35.*]

2. INDIANS (§ 35*)—INTRODUCTION OF LIQUOR INTO INDIAN TERRITORY—AU-
THORITY TO MAKE SEARCH.

Under Rev. St. § 2140, conferring on the superintendent of Indian
Affairs and Indian agents or subagents authority to search for liquors
suspected of having been unlawfully introduced into the Indian country,
and Act March 1, 1907, c. 2285, 34 Stat. 1017, extending such authority
to special agents of the Indian bureau for the suppression of the liquor
traffic among the Indians and their deputies, such special agents and
their deputies may make such searches in that part of Oklahoma for-
merly Indian Territory by virtue of their official position, and without
the formality of search warrants or other process.

[Ed. Note.—For other cases, see Indians, Cent. Dig. §§ 61, 62; Dec.
Dig. § 35.*]

In Equity. Suit by W. E. Evans against S. G. Victor, United
States Marshal, Eastern District of Oklahoma, and Henry A. Lar-
sen, Chief Special Officer, United States Indian Service. On mo-
tion for preliminary injunction. Denied.

Denton & Cochran, of Muskogee, Okl., for complainant.

William J. Gregg, U. S. Atty., for defendants.

CAMPBELL, District Judge. The question arises on plaintiff's
application for temporary injunction. The bill alleges that the plain-
tiff resides at Muskogee, in this district; that defendant Victor is
United States marshal for this district; that the defendant Larsen
is the duly appointed, qualified, and acting chief special officer of
the United States Indian service, located at Muskogee, Okl., and
charged with the duty of enforcing the laws of the United States
prohibiting the introduction of intoxicating liquors from other
states of the Union into the state of Oklahoma; that the plaintiff
is owner and proprietor of the Fountain Drug Store, in Muskogee,
engaged in the general retail drug business, including cigar stand,
and soda fountain. It is alleged that on August 7, 1912, the de-
fendant Victor, acting through his deputy, Joe Hubbard, and the
defendant Larsen, acting under color of their said offices, entered
plaintiff's place of business, over his protest, and without the au-
thority of a search warrant or other process, and proceeded to search
the same for intoxicating liquors; that thereby, for reasons set

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

out in the bill, the plaintiff has been damaged in the sum of $3,100. It is further alleged that the defendants threaten to continue making such searches, without search warrant or other process, and the question is raised whether, by virtue of their said offices, they may lawfully do so.

[1] It appears from the response of the defendant Victor that said deputy, Joe Hubbard, was not acting as his deputy when the said search of plaintiff's place of business was made, but was acting as deputy special officer under the said Larsen. So that the question here is confined to whether the defendant Larsen, or his deputies, may make such searches in the Eastern District of Oklahoma by virtue of their official position and without the formality of search warrants or other process. That so far as the introduction of liquor is concerned the Eastern District of Oklahoma, in which this question arises, is "Indian country" is settled by the decision of the Circuit Court of Appeals for this circuit in U. S. Express Co. v. Friedman, 191 Fed. 673, 112 C. C. A. 37, unless, as contended by counsel for plaintiff, the later United States Supreme Court cases of Ex parte Webb, 225 U. S. 663, 32 Sup. Ct. 769, 56 L. Ed. 1248, decided June 10, 1912, and Clairmont v. United States, 225 U. S. 551, 32 Sup. Ct. 787, 56 L. Ed. 1201, decided the same day (neither of which has been officially reported), may be said to authorize a contrary holding. In the Friedman Case, supra, the Circuit Court of Appeals holds that that portion of Oklahoma formerly the Indian Territory (which this district now comprises) did not cease to be Indian country on the admission of the state, nor did such admission affect the application to that part of the state of Revised Statutes, § 2139, or of Act Jan. 30, 1897, c. 109, 29 Stat. 506, relating to the introduction of liquor into the Indian country.

In the Webb Case, the Supreme Court said, as to the Friedman Case:

"The Circuit Court of Appeals in United States Express Company v. Friedman, 191 Fed. 673 [112 C. C. A. 37], dealt with the question whether that portion of Oklahoma formerly known as the Indian Territory ceased to be 'Indian country' upon the admission of Oklahoma as a state, so that these acts were no longer applicable, and with the question whether the admission of Oklahoma as a state had the effect of repealing them so far as pertained to the introduction of liquors into the territory. Petitioner's application to this court for a habeas corpus was intended to bring that decision under review, and the agreed statement of facts was designedly so framed as to show the grounds of his contention that the locus in quo is no longer 'Indian country.'

"The government, however, in resisting the application, relied for support of the jurisdiction of the District Court, not only upon the acts just referred to, but also upon section 8 of 'An act to provide for the appointment of additional judges of the United States court in the Indian Territory, and for other purposes,' approved March 1, 1895 (28 Stat. 693, c. 145).

"The three enactments in question are set forth in chronological order in the margin.

"At the time of the passage of the act of 1895 the territory known as the Indian Territory was that which was described by metes and bounds in Act May 2, 1890, 26 Stat. 81, 93, c. 182, § 29. It included the lands of the Cherokee Nation, and the city of Vinita, where the petitioner's alleged

offense was committed. It is now, of course, a part of the state of Oklahoma.

"It is not open to serious dispute that, if the prohibition of the act of 1895 against 'carrying into said territory any such liquors or drinks' remains operative so far as pertains to the carrying of intoxicating liquors from another state into that part of Oklahoma which was the Indian Territory, the acts admittedly done by the petitioner constitute an offense thereunder, of which the United States District Court has jurisdiction. Whether the offense is sufficiently alleged in the indictment is another question, which, on familiar grounds, is not a proper subject-matter for inquiry on habeas corpus. Ex parte Parks, 93 U. S. 18, 23 L. Ed. 787; Ex parte Virginia, 100 U. S. 339, 25 L. Ed. 676; Ex parte Carll, 106 U. S. 521 [1 Sup. Ct. 535], 27 L. Ed. 288; Ex parte Belt, 159 U. S. 95 [15 Sup. Ct. 987], 40 L. Ed. 88; Ornelas v. Ruiz, 161 U. S. 502 [16 Sup. Ct. 689], 40 L. Ed. 787. Recognizing this, counsel for the petitioner, upon the oral argument and in a supplemental brief, modified his original contentions, so as to deal with the act of 1895. As thus modified, the grounds upon which he relies are the following:

"First. That the act of 1895, being a special act applicable to the Indian Territory, had the effect of superseding as to that territory the existing general statute against the introduction and sale of intoxicating liquors in the Indian country.

"Secondly. That the act of 1897, being amendatory of the general statute against the introduction and sale of intoxicating liquors in the Indian country, did not apply to the Indian Territory, because that territory was covered by the special act of 1895.

"Thirdly. That the jurisdiction cannot be rested upon the act of 1897, because the place where the alleged offense was committed was not Indian country within the meaning of that act, since there was no Indian title remaining in the town site of Vinita; the insistence being that, where there is no Indian title, no inalienable land, and no allotted land held in trust, there can be no 'Indian country.'

"Fourthly. That, whether the act of 1895 or the act of 1897 would otherwise be applicable, these acts were both repealed, as to that part of Oklahoma which was formerly the Indian Territory, by the force of Oklahoma Enabling Act June 16, 1906, c. 3335, 34 Stat. 267, under the authority of which the Constitution of Oklahoma was adopted and a state government established, covering the territory previously known as Oklahoma and the Indian Territory, and pursuant to which certain statutes were afterwards enacted by the state Legislature, viz., an act of March 24, 1908, known as the 'Billups Law' being sections 4156-4209 of the Compiled Laws of Oklahoma of 1909, and an act passed March 11, 1911 (Session Laws of Oklahoma, 1910-1911, pp. 154-156).

"The contentions of the government, on the other hand, are:

"First. That the act of 1895 prohibits the liquor traffic in the Indian Territory, regardless of any question concerning the term 'Indian country,' or concerning the title to particular lands, or the race or color of the persons affected.

"Secondly. That the extinguishment of the Indian land title to the particular locus in quo did not remove it from the operation of section 2139, R. S., as amended by the acts of 1892 and 1897, because (among other reasons) a contrary intent is manifested in the treaties and statutes under which that title was extinguished.

"Thirdly. That neither by admitting Oklahoma to statehood, nor by anything in the Enabling Act, did Congress renounce its control over the interstate liquor traffic in what had been the Indian Territory.

"The question whether the act of 1895 was superseded by the act of 1897 was not much discussed in the argument. It is a question of nicety, having an importance extending beyond the exigencies of the present case. In the view we take of the other questions, however, we may simplify the discussion by assuming (without conceding) that petitioner's first two points are well taken, and that the act of 1897 did not apply to the Indian Territory

because that territory was covered by the special act of 1895. This at the same time renders it unnecessary for us to consider his third contention, viz., that the locus in quo, was not Indian country within the meaning of the act of 1897, because of the extinguishment of the Indian title. We may thus proceed at once to the question of the effect upon the act of 1895 of the Oklahoma Enabling Act of June 16, 1906 (34 Stat. 267, c. 3335), and the admission of the state of Oklahoma into the Union pursuant thereto. Since the government concedes that the act of 1895 has been thereby repealed saving so far as it prohibited the carrying of intoxicating liquors, etc., from another state into the territory, the matter to be discussed is still further narrowed.

"Before passing, however, it should be noted that section 2139, R. S., and the act of 1897, contain prohibitions respecting the sale of intoxicating liquor to Indians, and in this, and perhaps in other important respects, cover ground not covered by the act of 1895. We must not be understood as deciding that these prohibitions are no longer in force within what was the Indian Territory, either because of the assumed effect of the act of 1895 in superseding the previous general statute of which the act of 1897 was amendatory, or because of the Oklahoma Enabling Act and the admission of the state thereunder. The assumption we make in favor of the petitioner is for the purposes of the present argument only."

This does not amount to a holding that the act of 1897 does not also apply, nor that this is not Indian country. In the Clairmont Case it was held that the railroad right of way involved had ceased to be Indian country, because the Indian title thereto had been extinguished, and there was no provision of any treaty or any act of Congress indicating the intention of Congress that as to the right of way in question its status as Indian country should continue. On the question of what is Indian country, the court, in the Clairmont Case, supra, say:

"The proper criterion to be applied was considered in Bates v. Clark, 95 U. S. 204, 207, 208 [24 L. Ed. 471], where Mr. Justice Miller, delivering the opinion of the court, said: 'Notwithstanding the immense changes which have since taken place in the vast region covered by the act of 1834, by the extinguishment of Indian titles, the creation of states and the formation of territorial governments, Congress has not thought it necessary to make any new definition of Indian country. Yet during all this time a large body of laws has been in existence, whose operation was confined to the Indian country, whatever that may be. * * * The simple criterion is that as to all the lands thus described it was Indian country wherever the Indian title had not been extinguished, and it continued to be Indian country so long as the Indians had title to it, and no longer. As soon as they parted with the title, it ceased to be Indian country, without any further act of Congress, unless by the treaty by which the Indians parted with their title, or by some act of Congress a different rule was made applicable to the case.' "

It is true that in this district the "Indian title" to a great portion of the land, as that term is used, has been extinguished. This is particularly true of the town site of Muskogee, where this action arises, and, were that the only fact from which to determine its status, it might well be said that this is not now Indian country, and hence not subject to the operation of the laws of the United States, relating to the suppression of the liquor traffic among the Indians. But in addition to that fact there are the provisions of the various treaties and acts of Congress referred to in detail in both the Friedman and Webb Cases, supra, whereby Congress

makes plain its purpose to continue to protect the Indians of the Five Tribes against the introduction of liquor into what was the Indian Territory, making, as suggested in the case of Bates v. Clark, supra, a different rule applicable to this district.

It follows that, so far as the introduction of liquor is concerned, all that portion of the state which formerly comprised the Indian Territory still continues to be Indian country, and the site of the city of Muskogee, in which the acts complained of were committed, being included therein, is therefore Indian country.

[2] Section 2140 of the Revised Statutes of the United States provides:

"If any superintendent of Indian affairs, Indian agent or subagent, or commanding officer of a military post, has reason to suspect or is informed that any white person or Indian is about to introduce or has introduced any spirituous liquor or wine into the Indian country in violation of law, such superintendent, agent, subagent, or commanding officer, may cause the boats, stores, packages, wagons, sleds, and places of deposit of such person to be searched; and if any such liquor is found therein the same, together with the boats, teams, wagons, and sleds used in conveying the same, and also the goods, packages, and peltries of such person, shall be seized and delivered to the proper officer, and shall be proceeded against by libel in the proper court, and forfeited, one-half to the informer and the other half to the use of the United States; and if such person be a trader, his license shall be revoked and his bond put in suit. It shall moreover be the duty of any person in the service of the United States, or of any Indian, to take and destroy any ardent spirits or wine found in the Indian country, except such as may be introduced therein by the War Department. In all cases arising under this and the preceding section Indians shall be competent witnesses."

By Act March 1, 1907, c. 2285, 34 Stat. 1017, it was provided that:

"The powers conferred by section 2140 of the Revised Statutes upon Indian Agents and subagents and commanding officers of military posts, are hereby conferred upon the special agent of the Indian bureau for the suppression of the liquor traffic among Indians, and in the Indian country, and duly authorized deputies working under his supervision."

As it appears that the defendant Larsen was such officer and the defendant Hubbard such deputy, and that the acts committed were in the exercise of their respective duties as such officer and deputy, after having reason to suspect that there were upon said premises intoxicating liquors which had been unlawfully introduced into this district, it follows that they were acting within their official authority and the temporary injunction will, therefore, be denied. Bates v. Clark, 95 U. S. 204, 24 L. Ed. 471.

It is so ordered.